# United States Court of Appeals
## For the First Circuit

No. 14-1965

JASON WORCESTER,

Plaintiff, Appellee,

v.

SPRINGFIELD TERMINAL RAILWAY COMPANY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Ryan P. Dumais, with whom Glen L. Porter and Eaton Peabody were on brief, for appellant.
Marc T. Wietzke, with whom Flynn & Wietzke, P.C. was on brief, for appellee.

June 29, 2016

**BARRON**, <u>Circuit Judge</u>. Defendant, Springfield Terminal Railway Company ("Springfield"), appeals from a jury verdict awarding punitive damages to the plaintiff, Jason Worcester, under the whistleblower provisions of the Federal Railroad Safety Act (the "FRSA"). 49 U.S.C. § 20109. Springfield argues that the District Court gave the jury an incorrect instruction as to the standard for awarding punitive damages. We affirm.

## I.

On October 6, 2011, Springfield reported a leak of hydraulic fluid to the Maine Department of Environmental Protection. At that time, the plaintiff, Worcester, was an employee of Springfield. He became involved in a dispute with his supervisor about the safety implications of cleaning up the spill and was eventually fired. He then brought suit against Springfield under the FRSA's whistleblower protection provision, 49 U.S.C. § 20109. Following the trial, the jury awarded the plaintiff $150,000 in compensatory damages and an additional $250,000 in punitive damages. This appeal followed.

## II.

We begin with Worcester's challenge to our appellate jurisdiction, which depends on Worcester's contention that Springfield failed to timely file its notice of appeal. Generally, a notice of appeal must be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A).

Here, the notice was filed much later. Federal Rule of Appellate Procedure 4(a)(4)(A) provides, however, that "[i]f a party timely files" a motion for a new trial, "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." And the parties agree that Springfield timely filed a motion for a new trial. The question, therefore, is whether that motion tolled the clock for filing the notice of appeal.

Worcester contends that the clock was not tolled because there was no "order disposing of" that new trial motion. But we do not agree. The judgment in this case was entered on June 27, 2014. On July 24, 2014, Springfield filed a timely Rule 59 motion for a new trial. The plaintiff filed a response, and, on August 18, 2014, the District Court held a telephone conference with both parties regarding the motion for a new trial. On that call, in light of the plaintiff's response, Springfield withdrew its motion for a new trial, at which point the following colloquy occurred:

> THE COURT: All right. So I'm going to just take that as a verbal motion to withdraw that motion, and we will just declare it withdrawn, from our perspective, unless you wanted to file something, Mr. Porter.
> MR. PORTER: No, that's fine, Your Honor.
> THE COURT: All right. So then -- so that's off the table, then, we don't have to worry about that anymore. And is that the only pending motion in the case, then? All right.
> MR. WIETZKE: Yes, Your Honor.
> MR. PORTER: Yes, Your Honor.

>           THE COURT:  Okay.  So that's decided as of
>       today, and clocks are running.

Then, that same day, an electronic entry was entered on the docket noting: "ORAL WITHDRAWAL of: . . . MOTION for New Trial by SPRINGFIELD TERMINAL RAILWAY COMPANY."

The District Court's verbal ruling on the motion to withdraw left no pending motions remaining before the District Court, and -- as the District Court stated -- began the clock running on the time to appeal.  Thus, there was an "order disposing of" the motion, and so the clock for filing the notice of appeal was tolled.  See De León v. Marcos, 659 F.3d 1276, 1281 (10th Cir. 2011) ("[T]he district court's order acknowledging the withdrawal of De Leon's Rule 59 motion is sufficient for purposes of Rule 4(a)(4)(A)."); United States v. Rodríguez, 892 F.2d 233, 236 (2d Cir. 1989) ("[T]he filing of the motion for reconsideration stayed the running of the time for appeal under [Federal Rule of Appellate Procedure] 4(b), even though the motion was withdrawn."); Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1442 (9th Cir. 1986) ("[A]n order was issued disposing of the Rule 59 motion. The district judge referred to the motion and declared that it had been withdrawn."); see also Black's Law Dictionary 1270 (10th ed. 2014) ("An order is the mandate or determination of the court upon some subsidiary or collateral matter arising in an action . . . ."

(quoting 1 Henry Campbell Black, A Treatise on the Law of Judgments, § 1, at 5 (2d ed. 1902))).

In arguing to the contrary, Worcester relies on Vanderwerf v. SmithKline Beecham Corp., 603 F.3d 842 (10th Cir. 2010). But in that case, the appellants filed their notice of appeal on the same day that they filed a notice of withdrawal and thus before the district court had a chance to respond in any way to the notice of withdrawal. See id. at 845. In this case, by contrast, the withdrawal of the motion for a new trial occurred with the involvement of the District Court, which specifically stated that it was treating the party's statements "as a verbal motion to withdraw that motion," granted that verbal motion to withdraw, and noted the withdrawal of the new trial motion on the docket. As a result, Springfield's notice of appeal was timely, and our jurisdiction over this appeal is proper.

## III.

We turn now to the substance of the appeal. Springfield challenges the instruction that the District Court gave to the jury regarding punitive damages. "We review de novo preserved claims of legal error in jury instructions." Drumgold v. Callahan, 707 F.3d 28 (1st Cir. 2013) (quoting Uphoff Figueroa v. Alejandro, 597 F.3d 423, 434 (1st Cir. 2010)).

The FRSA's whistleblower provision explicitly provides for punitive damages. 49 U.S.C. § 20109(e)(3). It does not

specify, however, the standard for awarding punitive damages.  The District Court instructed the jury that it could award punitive damages if it found that Springfield acted, "[w]ith malice or ill will or with knowledge that its actions violated federal law or with reckless disregard or callous indifference to the risk that its actions violated federal law" (emphasis added).  The District Court took this standard from Smith v. Wade, 461 U.S. 30, 56 (1983).  There, the Supreme Court looked to general common law principles -- rather than the standard for awarding punitive damages adopted by any particular state -- in determining that this standard is the appropriate one for awarding punitive damages under 42 U.S.C. § 1983.  See id.

Springfield argued below, as it argues here, that the District Court was wrong to adopt the standard that the Court approved in Smith.  Springfield contends that the District Court should have instructed the jury to award punitive damages on the basis of the Maine state-law standard for punitive damages, as this suit is being brought in federal district court in Maine.  And, accordingly, Springfield contends, the District Court should have instructed the jury that it could award punitive damages only if it determined that that Springfield acted with malice, which Springfield contends is the standard for punitive damages under Maine state law.  See Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985).

Even assuming Springfield is right about Maine state law (a proposition that the plaintiff disputes), its argument still fails. The Department of Labor is the federal agency charged with administering the FRSA. See 49 U.S.C. § 20109(d). The Department's Administrative Review Board has interpreted the FRSA standard for awarding punitive damages to be the same as the Smith standard. Petersen v. Union Pac. R.R. Co., ARB Case No. 13-090, 2014 WL 6850019, at *3 (Nov. 20, 2014); see also BNSF Ry. Co. v. U.S. Dep't of Labor, 816 F.3d 628, 642 (10th Cir. 2016).[1] And while Springfield argues that this administrative interpretation of the FRSA is not entitled to deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), we still find the Administrative Review Board's "interpretation[] persuasive." Grosso v. Surface Transp. Bd., 804 F.3d 110, 117 (1st Cir. 2015); see also Skidmore v. Swift & Co., 323 U.S. 134 (1944).

Congress made clear that a primary purpose of the FRSA was that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106. That goal is hardly advanced by -- as Springfield argues we should -- adopting in each

---

[1] The Tenth Circuit has also applied the Smith standard when evaluating a punitive damages award under the FRSA, although the standard was apparently not disputed in that case. See BNSF, 816 F.3d at 642.

individual case the state-law punitive damages standard used by the particular state in which an FRSA action arises. Rather, in order to effectuate Congress's evident preference for "uniform[ity]" in the "law[s], regulations, and orders related to railroad safety," it makes sense to apply a single standard throughout the country. Id.

Additionally, the reasons that the Court gave in Smith for adopting the reckless disregard standard apply equally well here. In Smith, the Supreme Court determined that, at common law, "punitive damages in tort cases may be awarded not only for actual intent to injure or evil motive, but also for recklessness, serious indifference to or disregard for the rights of others, or even gross negligence." 461 U.S. at 48. And the Court concluded that nothing about "the policies and purposes of § 1983 itself require a departure from the rules of tort common law." Id.

The same is true regarding the FRSA, and Springfield makes no argument that if we were to use a single national standard, it should be the malice standard. For while Springfield contends that in Smith no party "argue[d] that the common law, either in 1871 or now, required or requires a showing of actual malicious intent for recovery of punitive damages," 461 U.S. at 38-39, Springfield does not argue that Smith's characterization of the prevailing common law standard for awarding punitive damages

is mistaken or that the common law was different at the time that the FRSA was passed.

Springfield's contention that adopting a uniform standard -- as Congress clearly seems to have favored -- would impermissibly create "federal common law" is also unpersuasive. Springfield cites several cases for the well-established rule that there is "no federal general common law." Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640 (1981); Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963).  But when federal courts interpret words in federal statutes -- here, the words, "punitive damages" -- they often look to general common law principles in order to determine the intended meaning of the word.  See, e.g., Microsoft Corp. v. i4i Ltd. P'ship, 131 S.Ct. 2238, 2245-46 (2011) (relying on the common law to determine the standard of proof required to show a patent's invalidity); Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries, 512 U.S. 267, 272 (1994) (looking to the common law to determine the meaning of the term "burden of proof" in the Administrative Procedure Act); id. at 282 (Souter, J., dissenting) (same).  Indeed, when, as here, "Congress uses a common law term and does not otherwise define it, it is presumed that Congress intended to adopt the common law definition." United States v. Gray, 780 F.3d 458, 466 (1st Cir. 2015) (quoting United States v. Patterson, 882 F.2d 595, 603 (1st

Cir. 1989)); accord Sekhar v. United States, 133 S. Ct. 2720, 2724 (2013); Strahan v. Coxe, 127 F.3d 155, 163 (1st Cir. 1997).

Springfield argues that even if the common law might be relevant in defining which types of damages constitute the "punitive damages" that the FRSA allows plaintiffs to recover, general common law principles may not be relied upon in determining the standard for awarding them. But we do not see why the common law would be relevant only in that limited respect. Cf. Microsoft Corp., 131 S.Ct. at 2245-46; D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 469-70 (1942) (Jackson, J., concurring) ("I do not understand Justice Brandeis's statement in Erie R. Co. v. Tompkins, that 'There is no federal general common law,' to deny that the common law may in proper cases be an aid to or the basis of decision of federal questions." (internal citation omitted)); Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 515 n.27 (1st Cir. 2011) ("Congress is presumed to legislate incorporating background principles of common law unless it indicates to the contrary."). Given that the Supreme Court looked to the common law in determining both the standard that should govern the award of punitive damages in Smith, 461 U.S. at 34, and the standard that governs the award of other damages that Congress provided may be recovered under § 1983, see Carey v. Piphus, 435 U.S. 247, 257-58 (1978) (construing the standard of compensatory damages under § 1983 in light of the common law), we find persuasive the

Administrative Review Board's decision to follow that same course in resolving the uncertainty presented here.  Accordingly, there was no error in the District Court's punitive damages instruction.

## IV.

For the foregoing reasons, the judgment of the District Court is **affirmed.**